IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LARSON, et al.       ) | Case No. 1:10-cv-01774 OWW JLT |
|                 ) | |
|      Plaintiffs,      ) | FINDINGS AND RECOMMENDATIONS |
|                 ) | DISMISSING COMPLAINT WITH |
|   vs.            ) | PREJUDICE |
|                 ) | |
| CENTRAL INTELLIGENCE AGENCY,  ) | (Doc. 1) |
| et al.,               ) | |
|                 ) | |
|      Defendants.     ) | |
| _____ ) | |

## I.   Screening

Plaintiffs are seeking to impose liability on the defendants based upon their claim that in 1997, plaintiff Larson was implanted with microscopic medical devices without his knowledge or consent.  Larson claims that the defendants purposefully activate the devices in a manner that causes him pain and interferes with his daily activities.

Under 28 USC § 1915(e)(2)(B), the Court is obligated to dismiss any case at any time if it, "is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  For the reasons set forth below, the complaint is **DISMISSED WITH PREJUDICE**.

1

2 **II.    Background**

3      Plaintiff David Larson and Brandi Baker, his fiancee, bring this action.  There are no legal

4 claims, that the Court has located, raised by Ms. Baker except for that she is in a relationship

5 with Larson and with whom she is raising her young daughter.

6      The body of the plaintiffs' complaint is 42 pages.  Attached to the complaint are

7 numerous exhibits, bringing the total page count to 146.  The complaint is a confusing and

8 extremely lengthy discussion of various acts attributed, in part, to the defendants but also to

9 unnamed employees of the federal government.  Due to the manner in which the complaint is

10 plead, it is extremely unwieldy and difficult to follow.

11      In essence, Larson alleges that in 1997 (Doc. 1 at Ex 1.11), he was assaulted by Dr. Loeb,

12 an employee of the Alfred Mann Foundation, and implanted with microscopic medical devices.

13 Plaintiff contends that upwards of 100 of these devices were implanted by Dr. Loeb in his

14 muscles and tissues to test whether they were effective for various conditions including hearing

15 loss, regulating bowel function and sleep apnea.  Id.  Larson describes himself as a "guinea pig."

16 Id.

17      As early as 2001, Larson claims that he discovered that the federal government had been

18 conducting medical experimentation, using testosterone infused medical devices, to evaluate the

19 effect of the devices on unwitting human test subjects.  (Doc. 1 at 3)  Coupled with the

20 information that Larson had been implanted with these devices and the knowledge that this

21 experimentation was occurring, Larson became convinced that the devices he believes are

22 implanted in his body, are being activated periodically by the defendants in a way that causes him

23 pain and interferes with his daily life.  (Doc. 1 at 10-13)

24      Larson claims that the defendants, including, former President George H. W. Bush, CIA

25 Director Leon Panetta and former CIA Deputy Director Stephen Kappes, Attorney General Eric

26 Holder and former Attorney General Alberto Gonzales, the Alfred Mann Foundation, its former

27

President, Joseph Schulman and Foundation employee Dr. Gerald Loeb, along with the County of San Bernardino Sheriff's Department and the Bureau of Prisons, have "interacted" with the medical devices by issuing "harmful electrical shocks" which made him unable to complete his job satisfactorily (leading to his firing) and interfering with his duties on an elected committee and will likely interfere with his intended 2012 campaign for the Office of the President of the United States.  Id.  Larson alleges that the defendants have "interacted" with the medical devices as recently as in the summer of 2010.  (Doc. 1 at 9-12).  Larson alleges that each of the defendants has conspired together as to the use of these micro-devices in his body. (Doc. 1 at 16)  Larson alleges that by July 2001, he had complained to the FBI, the Department of Defense and the National Institutes of Health about the medical devices implanted in his body. (Doc. 1 at 3)

Larson alleges also that he has been targeted by the defendants with counter-terrorism techniques "for numerous years, [that] continue daily in 12-hour shifts, sanctioned and authorized by the federal government defendants, and continue to cause bodily and other harm to plaintiffs."  (Doc. 1 at 16)  Plaintiff claims that the defendants have worked together to have him arrested and imprisoned for abusing the 911 emergency system, when he attempted to report the defendants' "interaction" with the medical devices implanted in his body. (Doc. 1 at 17-19)  Likewise, Plaintiffs allege that the defendants have secured the dismissal of civil actions that he has filed and interfered with his ability to obtain legal counsel.  (Doc. 1 at 15, 20-21)

Based upon these allegations, Plaintiffs raise causes of actions for violations under the Fourth, Fifth, Eighth, Fourteenth Amendments, for "Common Rule Violations for Medical Research and Experimentation," for violation of the Freedom of Information Act (related to his request for the housing information for the inmate who is accused of killing congressional intern, Chandra Levy), for failure to protect him from constitutional violations under 42 USC § 1986 and for conspiracy to violate his constitutional rights.

Though packaged a little differently here, Larson has brought this lawsuit several times before, most recently in the United States District Court, Central District of California, in case

number 2:09-cv-01296 PA JTL.[1]  In this earlier case, Larson named many of the same defendants

as in this current action including, the CIA and the Director of that agency, the Alfred Mann

Foundation and Dr. Gerald Loeb.  In dismissing this earlier matter, the Court ruled,

> Plaintiff David Larson, appearing pro se, alleges that in March of 1997 defendant Gerald E. Loeb, M.D. and others restrained Plaintiff and implanted biomedical devices into Plaintiff's body.  According to Plaintiff, the devices have been used repeatedly since that time by the defendants through telemetry or wireless technology to inflict pain on and shock Plaintiff.  Plaintiff alleges that these actions were performed by AMF with the funding and/or approval of the Federal Defendants, although it is unclear which defendants are alleged to have performed which acts.  Plaintiff brings claims for violation of the Fourth and Fifth Amendments to the United States Constitution, as well as state law causes of action for battery, negligence, and nuisance.
>
> Plaintiff previously brought actions in California state court against AMF, Dr. Loeb, and other defendants not named in this action. Although the claims and parties in that action are not identical to those in this action, the claims all flow from the initial allegation that Plaintiff was implanted with biomedical devices by Dr. Loeb in 1997. The state court actions were dismissed with prejudice on December 23, 2002 and May 2, 2003 on the grounds that they were barred by the statutes of limitations. [Footnote] (See AMF's Request for Judicial Notice, Exh. 3, Exh. 5.) On May 19, 2003, Plaintiff was declared a vexatious litigant in California state court on May 19, 2003. (See Request for Judicial Notice, Exh. 3, Exh. 7.)  AMF moves to dismiss on grounds that Plaintiff's Complaint violates state and federal law on vexatious litigation, and that the action is barred by the Rooker-Feldman doctrine. The Federal Defendants move to dismiss on grounds that the action is frivolous and fails to state a claim under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and that it is barred for failure to prosecute under Federal Rule of Civil Procedure 41(b).

(Doc. 49 (Case #2:09-cv-01296-PA-JLT) at 1-2, footnote omitted.)  Although the Court rejected

the defendants' motion to dismiss in part, it determined that the lawsuit violated the statute of

limitations and dismissed the matter without leave to amend.  The Court held,

> . . . all of Plaintiff's claims are based on the allegation that he was implanted with

---

[1] The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The record of a United States District court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th. Cir. 1980).  As such, the docket of the United States District Court, Central District of California is subject to judicial notice.

4

biomedical devices in 1997. Plaintiff's previous claims also based on that allegation were dismissed with prejudice in 2002 and 2003, and judgment entered in the state courts accordingly, because the state courts found that the statute of limitations had passed. (See AMF's Request for Judicial Notice, Exh. 3, Exh. 5.) The applicable statute of limitations for constitutional violations is determined by looking to the statute of limitations for state law personal injury suits in the state in which the challenged action occurred. See Wilson v. Garcia, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947, 85 L. Ed. 2d 254 (1985); Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d 1184, 1193 n.15 (9th Cir. 2008). In California, personal injury claims which accrued prior to January 1, 2003 were subject to a one-year statute of limitations. Equity, 548 F.3d at 1193 n.15. Claims accruing after January 1, 2003 are subject to a two-year statute of limitations. See Cal. Code Civ. P. § 335.1; Canatella v. Van De Camp, 486 F.3d 1128, 1132–33 (9th Cir. 2007). Here, the events that form the basis for Plaintiff's claims occurred in 1997. Plaintiff's Complaint was not filed until February 24, 2009. Plaintiff appears to have been aware of the alleged events in 1997 when they occurred, and was certainly aware of them no later than 2002, when he was able to file an action in state court based on the alleged events. Accordingly, the Court finds that all of Plaintiff's claims are time-barred. See Wilson, 471 U.S. at 276, 105 S. Ct. at 1947; Equity, 548 F.3d at 1193 n.15.

Furthermore, the Court agrees with the Federal Defendants that Plaintiff fails to raise a right to relief above the speculative level. See Fed. R. Civ. Proc. 8; Twombly, 550 U.S. at 555, 127 S. Ct. at 1965; see also Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1951, __ L. Ed. __ (2009) ("Under Twombly's construction of Rule 8, we conclude that respondent's complaint has not "nudged [his] claims" . . . "across the line from conceivable to plausible." (quoting Twombly, 550 U.S. at 570, 127 S. Ct. at 1974)). The Court also finds that amendment would be futile, and therefore leave to amend is denied. See Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) ("A district court . . . does not abuse its discretion in denying leave to amend where amendment would be futile.").

(Doc. 49 (Case #2:09-cv-01296-PA-JLT) at 3-4) Although Larson sought appellate review, on October 20, 2009, the Court rejected the appeal and held,

A review of the record and the opening brief indicates that the questions raised in this appeal are so insubstantial as not to require further argument. See *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam) (stating standard).

Accordingly, we summarily affirm the district court's judgment.

Larson v. Alfred Mann Foundation et al., No. 09-56091 (CA CD, Oct. 20. 2009).[2]

---

[2]For the same reasons set forth in Footnote 1, the Court takes judicial notice of the filings of the 9th Circuit Court of Appeals.

In addition, in August 2002 Larson sued the Alfred Mann Foundation, Gerald Loeb and Joseph Schulman, among others, in Los Angeles Superior Court in case number LC061991.[3]  In that action, Larson alleged damages related to the defendants implanting medical devices in Larson's body and using them to cause him harm.  He claimed also that the defendants took unlawful actions against him, including slander, false imprisonment and intentional infliction of mental distress in order to retaliate against him for pursuing legal action against them.  In his complaint filed in case number LC061991, Larson alleged,

> Plaintiff (David A. Larson) contends that medical devices recovered from his body by medical personnel in May of 2002 and other occasions, were implanted by Defendant Gerald E. Loeb in 1997 for research purposes as part of Defendant Schulman, Troyk, and Loeb's NIH contract from the development of prototype Microelectronic Neural prosthesis implants.  Plaintiff maintains that the devices recovered in 2002, were implanted without plaintiffs consent in 1997 following an assault in which the Defendant Gerald Loeb administered an inhalant anesthesia, and that the Defendants engaged in illegal and unethical research for personal, professional and financial gain.  Plaintiff will prove that Defendants conspired to commit this crime well in advance, that the premeditation includes prior research performed by Defendant Gerald Loeb that involved biocompatibility tests in feline species and that diagnostic radiology experiments allowed the Defendants to determine methods to conceal the devices implanted in their subject so as to prevent detection of the devices should the subject seek medical attention in a hospital or clinical environment. The Defendants were able to interact with the devices remotely using telemetry and wireless applications which were developed for Telemedicine purposes, and permitted control of device parameters as well as data acquisition for research purposes on a daily, hourly, and even chronic basis. Plaintiff will present evidence that the Defendants attempted to discredit the Plaintiff by soliciting allegations regarding the assault and inflating and exaggerating them in slanderous efforts, made attempts to mislead the Plaintiff into believing that innocent colleagues and co-workers of Defendants were involved in the illegal and unethical research, made willful attempts to provoke violence or criminal response from Plaintiff, and also falsely accused Plaintiff of criminal behavior.
>
> Additionally, Plaintiff contends that Defendants performed unethical research as an agent or representative of the National Institutes of Health, and that NIH personnel including NIH/NINDS/NPP Program Director William Heetderks had knowledge of the misconduct and contributed to the criminal misconduct, and contributed to the criminal misconduct, that the NIH failed to respond appropriately to written allegations of misconduct and requests for oversight, that

---

[3] The United States District Court, Central District of California took judicial notice of the complaint for damages and the resulting order dismissing the matter when it issued its order dismissing the case. (Doc. 31 (Case #2:09-cv-01296-PA-JLT))

NIH personnel failed to comply with Freedom of Information Act (FOIA) requirements, intentionally discouraged and misled and provided false information in regards to progress of Plaintiff's FOIA request, and then following an appeal for FOIA compliance, further violated FOIA regulations when incomplete/substituted materials were provided to Plaintiff with a letter incorrectly acknowledging that Plaintiff's request had been "satisfied".

Plaintiff also contends that the Los Angeles Police Department, Federal Bureau of Investigation, and Federal Communications Commission failed to respond appropriately to allegations and requests for oversight and enforcement, and denied Plaintiff due process and equal protection of the law.

Plaintiff contends that U.S. Department of Defense was involved and active in the NIH development of the Defendants implantable microelectronic devices, and that Defense Advanced Research Projects Agency personnel became personally affiliated and involved in their development by falsifying information and failing to disclose Defense Department appointment on NIH grant applications. Additionally, Plaintiff contends that after evidence was recovered and notification sent to William Tang, Co-Investigator on contract R01HD39099-01, DARPA personnel phoned Plaintiffs home and left a message with Plaintiff's family member that the household would lose access to the Internet and was due to a "threatening email transmission" sent by Plaintiff.

Plaintiff also contends that following recovery of evidence and allegations which resulted in investigation of Gerald Loeb by the University of Southern California, Defendants gained remote, unauthorized access to Plaintiff's computer and maliciously destroyed files and data as well as evidence in this case.

Plaintiff contends that Defendant interfered with Plaintiff's efforts to arrange legal consultation and representation, interfered with plaintiff's electronic email communications and prevented correspondence with medical and legal professionals, and also resorted to bribing other individuals, including Plaintiff's neighbors, into helping them avoid being litigated in this case. Plaintiff contends that Defendant offered financial compensation to Plaintiff's neighbor, an off duty LAPD Officer, who brandished his service weapon, pointed it at the Plaintiff, and attempted to have the Plaintiff arrested for "burglary". Plaintiff intends to present audio tape statement given during official complaint, and results of an LAPD Internal Affairs investigation, testimony and other evidence obtained during discovery process to substantiate this instance, as well as other instances of Defendant's solicitation or bribery.

Lastly, Plaintiff contends negligence and malpractice by County of Los Angeles medical facilities and personnel caused Plaintiff to suffer additional damages and that Plaintiff was misdiagnosed repeatedly, even though Plaintiff clearly communicated symptoms and accurately identified the cause for his suffering, that potentially harmful and dangerous pharmaceuticals were needlessly prescribed, with reckless abandon, and that administrative actions canceled prevented Plaintiff from Neurology or Radiology referrals that were desired and necessary

(Doc. 31 (Case #2:09-cv-01296-PA-JLT) at 19-21) On December 23, 2002, the court granted the

7

1   defendants' demurrer without leave to amend.  Undeterred, on February 19, 2003, Larson filed a

2   new matter in Los Angeles Superior Court but attached the body of the complaint from the earlier

3   litigation.  (Doc. 31 (Case #2:09-cv-01296-PA-JLT) at 33-51) Once again, the LA Superior Court

4   dismissed the case with prejudice.  Id at 39.  Soon thereafter, the LA Superior Court determined

5   that Larson was a vexatious litigant. Id. at 48-51.  Also, in 2007, Larson filed requests for

6   temporary restraining orders against Loeb (case number R-1502-cv-100276) and Mann (case

7   number R-1502-cv-100277) in the Kern County Superior Court, which were denied. (Doc. 45

8   (Case #2:09-cv-01296-PA-JLT) at 8-10, 12-13).

9   **III.   Legal Standards**

10         Complaints are governed by the notice pleading standard in Federal Rule of Civil

11   Procedure 8(a).  Although the Federal Rules of Civil Procedure adopt a flexible pleading policy,

12   a complaint must give fair notice and state the elements of plaintiffs' claim plainly and

13   succinctly.  Jones v. Community Redevelopment Agency,  733 F.2d 646, 649 (9th Cir. 1984).  In

14   other words, the complaint must give the defendants fair notice of what constitutes the plaintiffs'

15   claims and the grounds upon which they rests. Although a complaint need not outline all of the

16   elements of a claim, it must be possible to infer from the allegations that all of the elements exist

17   and that plaintiffs are entitled to relief under a viable legal theory.  Walker v. South Cent. Bell

18   Telephone Co., 904 F.2d 275, 277 (5th Cir. 1990).

19         In Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, (2009), the Court observed,

20         [T]he pleading standard Rule 8 announces does not require "detailed factual
          allegations," but it demands more than an unadorned,
21         the-defendant-unlawfully-harmed-me accusation. [Citations]. A pleading that
          offers "labels and conclusions" or "a formulaic recitation of the elements of a
22         cause of action will not do." [Citation].  Nor does a complaint suffice if it tenders
          "naked assertion[s]" devoid of "further factual enhancement." [Citation].

23

24   The Court further clarified that,

25         a complaint must contain sufficient factual matter, accepted as true, to "state a
          claim to relief that is plausible on its face." [Citation]. **A claim has facial**
26         **plausibility when the plaintiff pleads factual content that allows the court to**

27                                                    8

**draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"**

Id., emphasis added.  The Iqbal Court instructed, "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

To warrant relief under 42 USC §1983 or in a Bivens action, plaintiffs must show that the defendants' acts or omissions, under color or state or federal authority, caused the deprivation of their constitutionally protected rights.  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993);  Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991).  "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]."  Leer, at 633.  There must be an actual causal connection or link between the actions of each defendant and the deprivation alleged to have been suffered by plaintiffs.  See Monell v. Department of Social Services, 436 U.S. 658, 691-692 (1978)(citing Rizzo v. Goode, 432 U.S. 362, 370-371(1976)).

**A.    The causes of action based upon the facts alleged in Larson's 2009 lawsuit are barred by the doctrine of res judicata.**

As noted above, the United States District Court in the Central District of California dismissed Larson's lawsuit, which raised issues similar to those raised here.  This judgment was affirmed by the Ninth Circuit Court of Appeals on October 20, 2009.  Moreover, Larson filed lawsuits in the state court, which were dismissed in 2002 and 2003.

According to the doctrine of res judicata, "a final judgment on the merits of an action preludes the parties or their privies from relitigating issues that were or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, 94 (1980).  The doctrine of res judicata bars new

9

1  litigation when the earlier case "(1) involve[d] the same 'claim' as the later suit, (2) ha[s] reached

2  a final judgment on the merits, and (3) involve[d] the same parties or their privies." Nordhorn v.

3  Ladish Co., 9 F.3d 1402, 1404 (9th Cir. 1993).  The doctrine of res judicata "is motivated

4  primarily by the interest in avoiding repetitive litigation, conserving judicial resources, and

5  preventing the moral force of court judgments from being undermined." Haphey v. Linn County,

6  924 F.2d 1512, 1518 (9th Cir. 1991), rev'd in part on other grounds, 953 F.2d 549 (9th Cir. 1992)

7  (en banc).  On the other hand, according to the doctrine of "collateral estoppel . . . once a court

8  has decided an issue of fact or law necessary to its judgment, that decision may preclude

9  relitigation of the issue in a suit on a different cause of action involving a party to the first case."

10  Allen, 449 U.S. at 94.  Moreover, "a federal court must give to a state-court judgment the same

11  preclusive effect as would be given that judgment under the law of the State in which the

12  judgment was rendered." Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81

13  (1984).

14       Here, the state court and the United States District Court have determined that Larson's

15  claims that arose before August 2002 and February 24, 2009, respectively, are time-barred.

16  Therefore, the Court is bound by these determinations. See International Union of Operating

17  Engineers-Employers Constr. Indus. Pension, etc. v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993)

18  ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could

19  have been asserted' in the prior action.").  As a result, all claims raised by either of those cases,

20  or could have been, may not be pursued by Larson in this litigation.  On this basis, the Court

21  recommends that all causes of action, except for the Eighth and Tenth Causes of Action be

22  **DISMISSED** as barred.

23       **B.    The causes of action based upon actions occurring before September 27, 2009**

24            **are time-barred.**

25       Alternatively, as noted by the United States District Court, Central District of California,

26  the statute of limitations for constitutional claims is determined by the limitation period for state

27

law personal injury suits in the state in which the challenged action occurred. See <u>Wilson v.</u>
<u>Garcia</u>, 471 U.S. 261, 276 (1985);  <u>Equity Lifestyle Props., Inc. v. County of San Luis Obispo,</u>
548 F.3d 1184, 1193 n.15 (9th Cir. 2008). In California, the statute of limitations was one year
for personal injury claims that arose before January 1, 2003. <u>Equity</u>, 548 F.3d at 1193 n.15.  After
a change in the law, the personal injury limitation period was extended to two years for injuries
occurring after January 1, 2003. See Cal. Code Civ. P. § 335.1; <u>Canatella v. Van De Camp</u>, 486
F.3d 1128, 1132-1133 (9th Cir. 2007). Except for the Eighth and Tenth causes of action, the
events of which Plaintiff complains accrued before January 1, 2003.  Therefore, the Court
recommends that all causes of action, except for the Eighth and Tenth Causes of Action be
**DISMISSED** as time-barred. See <u>Wilson</u>, 471 U.S. at 276; <u>Equity</u>, 548 F.3d at 1193 n.15.

### C.     The complaint should be dismissed as lacking in facial plausibility

As noted above, the United States District Court determined that Larson's claims, that
Larson's claims, that he had been implanted with medical devices against his will and that
government defendants used the devices to cause him pain and interfere with his daily living
activities, to be implausible. (Doc. 49 (Case #2:09-cv-01296-PA-JLT) at 4) Similarly, here,
Larson alleges significant "facts" and attaches many documents that he contends demonstrate
that he has been the unwitting "guinea pig" for medical experimentation that has been ongoing
by various agencies and their directors since the early 1960s.

In looking at each of Larson's successive lawsuits, a pattern becomes clear.  For example,
he has named the FCC, the FBI and the CIA at various times.  He has named the various
directors of these agencies but has changed the directors' names as the directors have been
replaced.  In the state cases, he claimed a FOIA violation but that time he claimed the FBI was
the bad actor.  Here, he claims the BOP violated the FOIA.  He has attempted to obtain FBI
assistance to pursue claims against other scientific researchers including "Boston University
Researchers Frank Guenther & Allyn Hubbard who are both involved in the DARPA funded
MURI project at BU" and by alleging to the FBI "Criminal & scientific misconduct, assault,

battery attempted murder, involving individuals funded by federal programs to conduct research, illegal use of FCC spectrum . . ." (Doc. 1, Ex 14.3-14.4)  When flaws in his complaints are noted by the various court, he recasts his factual case in order to make the claims compliant.  For example, in his state cases, he did not claim that he continued to have medical devices in his body, although in his 2009 case and the current one, he does.

Simply put, like the Central District of California, the Court finds that Larson's allegations, made in all causes of action except the Eighth Cause of Action, simply do not form a plausible basis upon which this Court can conclude that liability may be imposed. Although the Court is convinced that Larson believes his claims, to the Court, the allegations are, quite simply, lacking in any credibilty.  Therefore, the Court recommends that all causes of action, except for the Eighth Cause of Action be **DISMISSED** as implausible.  Iqbal, 129 S.Ct. at 1949.

### D.      The Eighth Amendment does not apply

The Eighth Amendment's protection against cruel and unusual punishment applies only to convicted prisoners. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); Bell v. Wolfish, 441 U.S. 520, 535 (1979).  Although Larson claims that he has been placed in custody at times in the past, his current claims do not arise under the Eighth Amendment because he is not a convicted prisoner.  Therefore, the Second Cause of Action is recommended to be **DISMISSED.**

### E.      Federal agencies and federal employees who act in their official capacities are not amenable to suit.

The United States is immune from suit unless it has waived its sovereign immunity and consents to be sued. See, e.g., United States v. Dalm, 494 U.S. 596, 608 (1990); United States v. Sherwood, 312 U.S. 584, 586 (1941); United States v. Shaw, 309 U.S. 495, 500-501 (1940); Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985).  Absent a waiver of sovereign immunity, a federal court lacks subject-matter jurisdiction over a claim against the United States, and dismissal is required. Hutchinson v. United States, 677 F.2d 1322, 1327 (9th Cir. 1982). A waiver of sovereign immunity cannot be implied; rather, it must be unequivocally expressed.

United States v. Mitchell, 445 U.S. 535, 538 (1980).

An action brought against a federal agency, such as the CIA or the Bureau of Prisons, is effectively one brought against the United States.  See, e.g., Dugan v. Rank, 372 U.S. 609, 620 (1963). As an agency of the United States, the CIA and the BOP possess the same sovereign immunity as the United States.   Therefore, neither agency can be sued absent an express waiver of that immunity. State of Neb. ex rel. Dep't. of Soc. Servs. v. Bentson, 146 F.3d 676, 679 (9th Cir. 1998).

The sovereign immunity doctrine applies with equal force to suits against a federal employee in his official capacity. "It has long been the rule that the bar of sovereign immunity cannot be avoided by naming officers and employees of the United States as employees." Gilbert, 756 F.2d at 1458. "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." State of Hawaii v. Gordon, 373 U.S. 57, 58 (1963). "When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States,  the action is in fact one against the United States." Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989).

Although Plaintiffs take pains to identify defendants Panetta, Holder, Gonzales, Kappes and Bush in their individual capacities, the Court finds that the acts complained of are, in fact, actions taken in their official capacities.  Thus, as to each of these defendants, the CIA and the BOP, the Court recommends that the matter be **DISMISSED** based upon sovereign immunity.

F.    **The San Bernardino County Sheriff Department is not subject to Bivens liability**

Plaintiff seeks to impose liability against a municipality under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). 1458 (9th Cir. 1985). However, Bivens does not apply to municipalities.  Van Strum, 940 F.2d at 409 (section 1983 and Bivens actions are identical except for the replacement of a state actor under section 1983 by

13

1  a federal actor under Bivens).  Monell v. Department of Social Services, 436 U.S. 658, 691-692

2  (1978), determines when a municipality may be held liable under 42 USC § 1983.

3        In order to state a claim under Monell, the pleading must demonstrate that a custom or

4  policy of the entity caused the violation of Plaintiff's federally protected  rights. Monell, 436 U.S.

5  at 694.  A plaintiff seeking to establish municipal liability under § 1983 may do so in one of three

6  ways: 1) the plaintiff may demonstrate that a municipal employee committed the alleged

7  constitutional violation "pursuant to a formal governmental policy or longstanding practice or

8  custom which constitutes the standard operating procedure of the local governmental entity;" 2)

9  the plaintiff may demonstrate that the person who committed the constitutional violation "was an

10  official with final policy-making authority and that the challenged action itself thus  constituted

11  an act of official government policy;" or 3) the plaintiff may demonstrate that "an official with

12  final policy-making authority ratified a subordinate's unconstitutional decision or action and the

13  basis for it." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

14        Here there are no facts alleged that the County of San Bernardino has an unconstitutional

15  policy or custom.  At most, Larson alleges that he has been subject to unlawful activities by

16  employees of that agency.  This does not state a claim under Monell.

17        **G.    Private agencies and their employees are not liable under Bivens**

18        To state a cause of action under Bivens and its progeny, a plaintiff must allege: (1) that a

19  right secured by the Constitution of the United States was violated; and (2) that the alleged

20  deprivation was committed by a federal actor. Van Strum v. Lawn, 940 F.2d at 409.

21  Therefore, a Bivens-defendant must be an individual acting under federal governmental authority

22  and the plaintiff must have no other alternative remedy for the harm alleged. Correctional

23  Services Corp. v. Malesko, 534 U.S. 61, 70 (2001).

24        In the First, Second and Third causes of action, Plaintiffs attempt to impose constitutional

25  liability on the Alfred Mann Foundation and Joseph Schulman, who are private actors.  Because

26  these private actors do not act under federal government authority or under color of state law, the

27                                          14

1   Court recommends that the First, Second and Third causes of action as to these defendants be

2   **DISMISSED**.

3       **H.      Holder, Panetta, Kappes and Gonzales may not be held liable on the Ninth**

4             **cause of Action**

5        Plaintiffs allege that Defendants Holder, Panetta, Kappes and Gonzales "knew or should

6   have known of violations of law committed against plaintiffs" but failed to prevent the acts from

7   occurring or reoccurring. (Doc. 1 at 36-37)  The Plaintiffs claim that they sent "communications"

8   to Holder and Panetta, among others, that constituted "requests for assistance." (Doc. 1 at 37)

9   They do not allege that they had communication with Gonzales or Kappes.  Id.  Plaintiffs do not

10  allege the contents of these communications such that the Court can evaluate whether these

11  "communications" should have been taken seriously by Holder or Panetta or should have placed

12  them on notice of wrongdoing by their subordinates.

13       In any event, generally, supervisors are not liable under § 1983 for the actions of their

14  employees.  Therefore, when a named defendant holds a supervisory position, the causal link

15  between him and the claimed constitutional violation must be specifically alleged. See Fayle v.

16  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

17  1978).  In Iqbal,129 S.Ct. at 1949, the United States Supreme Court held

18       [Respondent] argues that, under a theory of "supervisory liability," petitioners can
         be liable for "knowledge and acquiescence in their subordinates' use of
19       discriminatory criteria to make classification decisions among detainees." Iqbal
         Brief 45-46. That is to say, **respondent believes a supervisor's mere knowledge**
20       **of his subordinate's discriminatory purpose amounts to the supervisor's**
         **violating the Constitution. We reject this argument**. Respondent's conception
21       of "supervisory liability" is inconsistent with his accurate stipulation that
         petitioners may not be held accountable for the misdeeds of their agents. In a §
22       1983 suit or a *Bivens* action--where masters do not answer for the torts of their
         servants--the term "supervisory liability" is a misnomer.  Absent vicarious
23       liability, **each Government official, his or her title notwithstanding, is only**
         **liable for his or her own misconduct. In the context of determining whether**
24       **there is a violation of clearly established right to overcome qualified**
         **immunity, purpose rather than knowledge is required to impose *Bivens***
25       **liability on the subordinate for unconstitutional discrimination**; the same
         holds true for an official charged with violations arising from his or her
26       superintendent responsibilities.

27                                                    15

The allegations of the complaint fall well short of demonstrating unlawful action taken by these defendants and, at most, demonstrate knowledge of action taken by others.  This is insufficient according to Iqbal. Therefore, the Court recommends that the Ninth Cause of Action against these defendants be **DISMISSED**.

> **I.**      **The Eighth Cause of Action for violation of the FOIA, should be dismissed because it is unrelated to the other claims**.

In the Eighth Cause of Action, Plaintiffs claim that they contacted the Bureau of Prisons to obtain information about the housing location of inmate, Ingmar Guandique, who is accused of killing congressional intern, Chandra Levy.  (Doc. 1 at 35-36) The BOP responded to the request by notifying Larson, "Inmate not Found." Id.  Plaintiffs had located this information already from the BOP's online resource.  Id.  However, the Plaintiffs complain that in responding, "the BOP failed to provide the requested information, failed to cite an exemption, and did not assign a FOIA control number to plaintiff's FOIA request." Id.

Although Plaintiffs incorporate the 108 paragraphs of allegations that precede this cause of action into it, they provide no allegation that this FOIA request bears on whether Larson was unwittingly implanted with medical devices and whether the defendants are using the devices to cause him pain and suffering.

Recently in Lopez v. Schwarzenegger, 2010 U.S. Dist. LEXIS 105663, *15-16 (E.D. Cal. Oct. 4, 2010) the Court held,

> Fed. R. Civ. P. 18(a) provides: "A party asserting a claim, counter-claim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits[.]" Id.
>
> It is true that Fed. R. Civ. P. 20(a) provides that "[p]ersons ...may be joined in one action as defendants if: (A) any right is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." However, "[a] buckshot

complaint that would be rejected if filed by a free person — say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions — should be rejected if filed by a prisoner." Id. at 607.

Plaintiff may not use the instant complaint as a vehicle to heap claim after unrelated claim against different defendants.

Because the Eighth Cause of Action is unrelated to the other claims raised and it is raised against a different, unrelated defendant, the Court recommends that the Eighth Cause of Action be **DISMISSED**.

### J.    The complaint violates Rule 8

As noted above, Federal Rules of Civil Procedure Rule 8 requires Plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Plaintiffs' complaint is neither short nor plain.  The complaint is 42 pages long.  With the significant number of attachments, the complaint exceeds 140 pages.  The complaint frequently repeats itself and winds its way through factual allegations stemming from events occurring in the early 1960s and attempts to provide plausibility by referring to historical events like the Watergate scandal, Larson's volunteer work with the Forest Service, his intention to campaign for the Office of the President of the United States in 2012 and the murder of congressional intern Chandra Levy without any coherent explanation as to how these allegations bear on the substantive claims Plaintiffs are making.  Instead, the complaint fails utterly, to simply and plainly state the Plaintiffs' claims.  Therefore, the Court recommends that the complaint be **DISMISSED**.

### K.    Because plaintiff Baker's claims are merely derivative of Larson's claims, the complaint as to her should be dismissed

Baker fails to outline any unlawful conduct that she has suffered.  At most, she claims that she is in a relationship with Larson, although the two do not share a common household as documented by the separate addresses listed on the caption page.  Baker complains that as a result of the acts of which Larson complains, Larson has lost income which, in turn, means that

17

he provides her less financial support.  However, she has provided no basis for the Court to

conclude that she has a legally enforceable interest in Larson's financial support.  Moreover,

although Baker reports that she is raising her child with Larson, she does not claim that he is the

biological father to the girl.  To the contrary, the parties admit that the girl is seven years old

(Doc. 1 at 1) but that Baker did not enter into a relationship with Larson until six years ago.

(Doc. 1, Ex. 11)  Thus all claims related to Baker are recommended to be **DISMISSED.**

## RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that the complaint be

**DISMISSED WITH PREJUDICE**.

This Findings and Recommendations is submitted to the United States District Court

Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304

of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within 14 days after being served with a copy of this Report and Recommendation, any party

may file written objections with the Court and serve a copy on all parties.  Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies

to the Objections shall be served and filed within 14 days after service of the Objections.  The

Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The

parties are advised that failure to file objections within the specified time may waive the right to

appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **October 7, 2010**                          **/s/ Jennifer L. Thurston**
                                                         UNITED STATES MAGISTRATE JUDGE